James HOPPER and Barbara Hopper, husband and wife, and T.K., a minor, by her next friends James Hopper and Barbara Hopper, Appellants–Plaintiffs/Cross–Appellees,

v.

COLONIAL MOTEL PROPERTIES, INC. d/b/a Colonial Inn Motor Hotel, David Wayne Clary, and Jason Michael Bird, Appellees–Defendants/Cross–Appellants.

No. 10A01–0109–CV–357.

Court of Appeals of Indiana.

Feb. 4, 2002.

William C. Lloyd, Bill Lloyd & Associates, Bloomington, IN, Attorney for Appellants.

James L. Fischer, Jr., Boehl Stopher & Graves, New Albany, IN, Attorney for Appellees.

## OPINION

BAKER, Judge.

Appellants-plaintiffs and cross-appellees James and Barbara Hopper (the Hoppers) and T.K., the Hoppers' minor granddaughter, appeal the trial court's entry of summary judgment in favor of the appellees-defendants Colonial Motel Properties, Inc., (Colonial Motel), David W. Clary and Jason M. Bird,[1] with respect to their claims for nuisance and breach of contract. Specifically, the Hoppers contend that the existence of genuine issues of material fact preclude summary judgment for Colonial Motel. Colonial Motel also cross-appeals, contending that it was entitled to summary judgment with respect to the Hoppers'

---

1. Neither Bird nor Clary are parties to this appeal.

claim against it for negligence and premises liability.

## FACTS

On August 1, 1998, the Hoppers and their then two-year-old granddaughter, T.K., arrived at the Colonial Motel in Clarksville. The Hoppers paid a rental fee, were issued a key by motel personnel and were assigned to room 113.

At approximately 9:30 p.m. that evening, Barbara was injured when Clary, one of the occupants of room 213, which was located directly above the Hoppers' room, accidentally discharged a handgun while attempting to place the pistol in his waistband. The bullet traveled through the floor of room 213 and ceiling of room 113, ultimately striking Barbara in the chest.

Clary and Bird had arrived at Colonial Motel at around 9:30 p.m. on July 29. At that time, both men were sought by the police for a number of theft-related crimes that had occurred in the Louisville, Kentucky area. When they checked in, Clary parked the stolen vehicle he was driving on the side of the building so as not to be seen by motel staff and security. Each day during their stay, Bird walked to the motel's office and paid for the room with cash. Bird and Clary maintained stolen property, guns and drugs in the room. They kept the curtains drawn and instructed the various visitors they had in their room to park on the side of the building so as not to arouse any suspicion. Bird and Clary also directed the motel staff not to perform any housekeeping services in the room. Rather, Clary and Bird requested the housekeepers to deliver clean bath towels to them through their partially open motel room door with the lights off.

The designated evidence demonstrated that it was not unusual for individuals to stay at the motel for a number of days. Colonial Motel personnel acknowledged that it had a regular clientele that included employees of construction companies, sales firms, trucking firms and other businesses who would often stay at the motel on a regular basis for several nights at a time.

During Clary and Bird's stay at the motel, neither of the men ever displayed a handgun, and no one employed by Colonial Motel was informed that Bird or Clary might be engaged in any criminal activity. Additionally, there were no complaints from any of the other guests at the motel regarding suspicious behavior or noise coming from the room.

On the evening that Barbara was shot, Colonial Motel's private security guard had been patrolling the motel parking area, lounge and other areas on the premises. The guard routinely made such patrols approximately every thirty minutes. Colonial Motel also utilized local law enforcement on occasion where burglaries, thefts, or domestic disputes had occurred on the premises.

Following the shooting incident, the Hoppers filed a complaint against Colonial Motel on November 23, 1998. They contended that Colonial Motel was liable under a public or private nuisance theory and that Colonial Motel was in breach of contract because it had failed to "properly perform its duties and obligations ... as applicable to each Plaintiff and said breach was a substantial factor resulting in harm and damages." Appellant's App. at 17. The Hoppers also alleged that Colonial Motel was negligent because it had breached its duty to "provide, supervise, control, and maintain a reasonably safe premises for the agreed presence and use of each Plaintiff." Appellant's App. at 18. Thus, the Hoppers claimed that Colonial Motel was liable because its acts and omissions, coupled with the negligence of Clary and

Bird, proximately caused their injuries. Appellant's App. at 18.

After denying the allegations set forth in the complaint, Colonial Motel filed a motion for summary judgment on August 16, 2000, as to all counts alleged by the Hoppers. Colonial Motel asserted that the Hoppers were precluded from successfully maintaining a cause of action against it for nuisance as a matter of law because it did not proximately cause the physical injuries sustained by Barbara or the emotional distress suffered by James and T.K. Colonial Motel also argued that the Hoppers' action for breach of contract could not survive because its conduct was not a substantial factor contributing to the damages, that the Hoppers' injuries and damages were not foreseeable at the time they entered into the contract to rent the room and that the Hoppers were precluded from recovering damages for emotional distress in a breach of contract action. Finally, Colonial Motel argued that it was entitled to judgment as a matter of law with respect to the negligence claim because it had no duty to protect the Hoppers from Clary's unforeseen accidental act of shooting Barbara and that his conduct amounted to an intervening superseding cause of the injuries that precluded any recovery from Colonial Motel. Appellant's App. at 38–56. The Hoppers opposed the motion and moved for partial summary judgment on November 14, 2000, claiming that Colonial Motel was liable for the Hoppers' injuries as a matter of law in light of the innkeeper-guest relationship that existed and the nondelegable duty that Colonial Motel had assumed and breached when it rented the room to them. Appellant's App. at 68–72.

Following a hearing, the trial court granted Colonial Motel's summary judgment motion with respect to the Hoppers' claims for nuisance and breach of contract. It denied the motion with respect to the

cause of action based upon negligence and premises liability, determining that a genuine issue of material fact existed. Both parties now appeal.

## DISCUSSION AND DECISION

### I. Standard of Review

In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *Smith v. Allstate Ins. Co.*, 681 N.E.2d 220, 223 (Ind.Ct.App.1997). We do not weigh evidence, but will liberally construe the facts in the light most favorable to the nonmoving party. *General Motors Corp. v. Northrop Corp.*, 685 N.E.2d 127, 132 (Ind.Ct.App.1997), *trans. denied.* Summary judgment should be granted only when the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). On appeal, we must determine whether there is a genuine issue of material fact and whether the law has been correctly applied by the trial court. *City of Elkhart v. Agenda: Open Gov't, Inc.*, 683 N.E.2d 622, 625 (Ind.Ct. App.1997), *trans. denied.* The party appealing the grant of summary judgment has the burden of persuading this court on appeal that the trial court's ruling was improper. *Jordan v. Deery*, 609 N.E.2d 1104, 1107 (Ind.1993).

### II. Nuisance

The Hoppers first contend that the trial court erred in granting Colonial Motel's motion for summary judgment on their claims against it for nuisance. In essence, the Hoppers urge that Colonial Motel's failure to supervise, inspect and control Bird and Clary's room amounted to a nui-

sance by allowing Bird and Clary to engage in criminal activity inside the room.

In resolving this issue, we initially observe that a "nuisance" is defined in IND. CODE § 34–19–1–1 as:

Whatever is:

(1) Injurious to health;

(2) indecent;

(3) offensive to the senses; or

(4) an obstruction to the free use of property;

so as essentially to interfere with the comfortable enjoyment of life or property; is a nuisance, and the subject of an action.

Through the years, this court has drawn a general distinction between two types of nuisance. Specifically, a "public" nuisance is one that affects an entire neighborhood or community, while a "private" nuisance affects only one individual or a determinate number of people. *Wernke v. Halas*, 600 N.E.2d 117, 120 (Ind.Ct.App.1992). We have further recognized that "nuisance per se," or nuisance at law is that which is a nuisance in itself, and which, therefore, cannot be so conducted or maintained as to be lawfully carried on or permitted to exist. *Id.* On the other hand, a "nuisance per accidens," or one in fact, becomes a nuisance by virtue of the circumstances surrounding the use. *Id.; see also Hutchens v. MP Realty Group*, 654 N.E.2d 35, 38 (Ind.Ct.App.1995), *trans. denied.* A private nuisance arises when it is demonstrated that one party uses his property to the detriment of the use and enjoyment of the property of another. *Wernke*, 600 N.E.2d at 120.

In the instant case, we note that the Hoppers' complaint seeks to recover for Barbara's gunshot wound, her emotional distress and the distress suffered by her husband and T.K. as a result of the incident. The Hoppers have failed to make any showing that they were attempting to recover because of Colonial Motel's "interference with their use and enjoyment of the room." Again, it is the gunshot wound suffered by Barbara that forms the essence of this action. As a result, the Hoppers are not entitled to recover under a "private" nuisance theory against Colonial Motel. *See Hutchens*, 654 N.E.2d at 40 (holding that summary judgment was properly entered for apartment complex when plaintiff's action for nuisance after receiving a cut from a carport was the result of a personal injury and not interference with property rights).

The Hoppers also maintain that they should be permitted to proceed with their claim on a public nuisance theory because Colonial Motel "voluntarily and habitually accepted a high-risk clientele." Appellant's Brief at 16. In addressing this contention, we note that in *Sand Creek Partners v. Finch*, 647 N.E.2d 1149, 1152 (Ind. Ct.App.1995), this court observed:

Not every dangerous agency is a nuisance and we believe it can be said generally that an instrumentality maintained upon private premises may only be said to be a nuisance upon the ground that it is calculated to produce personal injuries when it is of such character, and so maintained, that it is reasonably and naturally calculated to injure the general public or strangers who may come upon the premises.

In addition to the above, we observed in *Sand Creek Partners* that one claiming damages from a public nuisance must demonstrate that the agency as operated has more than a mere tendency or increased likelihood of causing an injury. The alleged nuisance must cause injury as a reasonable and normal result of its operation. *Id.* at 1153.

In essence, the Hoppers assert that Clary's and Bird's use of their room for illegal purposes, including the use of drugs and alcohol and the storage of stolen property, necessarily led to the foreseeable presence of dangerous firearms. Appellant's App. at 12. Contrary to this contention, however, there is no designated evidence demonstrating that Colonial Motel had any actual knowledge of Clary's or Bird's activities inside the room. The Hoppers suggest that motel personnel should have suspected something because the housekeepers observed one of the men carry beer into the room three days prior to the shooting. They also maintain that motel personnel should have become suspicious because Clary and Bird kept the curtains to the room drawn, the door shut and requested no housekeeping service except fresh bath towels. Although the tenants' behavior may have seemed odd, we cannot agree, in these circumstances, that Colonial Motel should have foreseen that Bird or Clary would possess firearms, let alone that a gun might be accidentally discharged.

Put another way, it can hardly be said that the operation of a motel could "reasonably and normally" be expected to produce a gunshot injury to another guest who was staying in another room. It was, therefore, reasonable for the trial court to conclude that Colonial Motel's operation of its business was not calculated to injure the general public so as to permit the Hoppers to recover under a public nuisance theory. Thus, summary judgment for Colonial Motel on this claim was properly granted.

## II. Breach of Contract

The Hoppers next argue that it was error to grant Colonial Motel's motion for summary judgment with respect to the breach of contract claim. Specifically, they assert that judgment as a matter of law was inappropriately entered because the designated evidence established that Colonial Motel was in breach of the contract with the Hoppers when it "failed to fulfill and breached its duties and responsibilities as to each plaintiff." Appellant's App. at 14, 15, 17.

In addressing this contention, we note that the essential elements of a breach of contract action are: 1) the existence of a contract; 2) the defendant's breach thereof; and 3) damages. *Fowler v. Campbell*, 612 N.E.2d 596, 600 (Ind.Ct. App.1993). The plaintiff in such an action has the burden of demonstrating that the defendant's breach was a substantial factor contributing to the damages. *Holloway v. Bob Evans Farms, Inc.*, 695 N.E.2d 991, 995 (Ind.Ct.App.1998). The test for measuring damages in a breach of contract action is the foreseeability of such damages at the time of entering into the contract rather than the facts existing and known to the parties at the time of the breach. *Fowler*, 612 N.E.2d at 601. As a result, recovery for personal injuries on a contract claim is generally permissible only when the particular injury was within the parties' contemplation during contract formation. *Johnson v. Scandia*, 717 N.E.2d 24, 31 (Ind.1999).

In the instant case, the Hoppers base their claim upon Colonial Motel's purported failure to clean and inspect the room during Clary and Bird's occupancy of it. Thus, they maintain that such a failure resulted in the illegal activity that ultimately resulted in the injuries. Contrary to the Hoppers' claims, there is no evidence suggesting that any of Colonial Motel's employees were ever told or put on notice that Clary or Bird might have been in possession of firearms. Appellee's App. at 16, 17, 20, 21. As set forth in the *FACTS*, both Clary and Bird attempted to

remain unnoticed when they closed their door to the room and kept the curtains drawn. Appellant's App. at 309, 310. Neither of them displayed the handgun to any motel worker or to any other guest. Clary typically kept the pistol concealed on his person or in a drawer inside the motel room. Appellee's App. at 16, 17, 20, 21. Each day, the Colonial Motel staff contacted the men by telephone and inquired as to whether they planned to stay another night and whether they needed housekeeping services. The evidence shows that the motel personnel honored Clary and Bird's request by delivering clean towels to their room on a daily basis and not performing housekeeping services. Colonial Motel retained security officers who patrolled the premises and no complaints or reports were received of any suspicious activity regarding Clary or Bird's activities. Appellee's App. at 18, 58. Moreover, it is undisputed that the discharge of the gun was accidental. Thus, the incident was unintended and unforeseen by Clary who was the actual shooter. Appellant's App. at 294–95. It stands to reason that the contract for the rental of the room would probably not have been consummated if either the motel staff or the Hoppers had known that Clary possessed a handgun in the room. Inasmuch as the designated evidence shows that Clary did not foresee an accidental discharge of the handgun, it can hardly be recognized as an event that was contemplated as a natural result of any breach of contract by the motel at the time the contract for the room rental was executed. Thus, under these circumstances, it was reasonable for the trial court to conclude as a matter of law that Colonial Motel's conduct was not a substantial factor that contributed to the Hoppers' damages resulting from the gunshot wound. As a result, summary judgment was properly granted for Colonial Motel on the Hoppers' breach of contract claim.

### III. Cross–Appeal: Negligence and Premises Liability

Finally, Colonial Motel cross-appeals, alleging it was entitled to summary judgment with respect to the Hoppers' claim against it for negligence and premises liability. Specifically, Colonial Motel argues that the trial court erred in denying its claim on this count because the discharge of the gun was not reasonably foreseeable under these circumstances, there was no assumed duty on Colonial Motel's part to protect the Hoppers from the shooting and, given the unforeseen nature of the incident, the shooting rose to the level of an intervening superseding cause so as to negate liability.

We first note that in order to recover on a negligence claim, the plaintiff must establish a duty on the part of the defendant to conform his conduct to a standard of care arising out of his relationship with the plaintiff, a failure on the part of the defendant to conform his conduct to the requisite standard of care, and an injury to the plaintiff that is proximately caused by the breach. *Franklin v. Benock,* 722 N.E.2d 874, 878 (Ind.Ct.App. 2000). Absent a duty, there can be no breach and, therefore, no recovery for the plaintiff in negligence. *Id.* The status of an individual when injured on the premises of another determines the duty owed to that person by the landowner. *Markle v. Hacienda Mexican Rest.,* 570 N.E.2d 969, 972 (Ind.Ct.App.1991).

Our supreme court has recognized that a hotel guest is a business invitee of the hotel owner. *Ellis v. Luxbury Hotels, Inc.,* 716 N.E.2d 359, 360 (Ind.1999). A landowner's duty to business invitees includes a duty to exercise reasonable care to protect them from the foreseeable dangerous behavior of others on the premises.

*Bearman v. Univ. of Notre Dame,* 453 N.E.2d 1196, 1198 (Ind.Ct.App.1983). However, there is no duty on the part of a landowner to insure a business invitee's safety while on the premises. *Ellis,* 716 N.E.2d at 360.

■■■ We also note that a "totality of the circumstances" test is applied in determining whether a landowner owes a duty to take reasonable care to protect an invitee from the criminal acts of a third party. *Delta Tau Delta v. Johnson,* 712 N.E.2d 968, 973 (Ind.1999). In applying such a test, the court must consider all of the circumstances surrounding an event including the nature, condition and location of the land, as well as prior similar incidents to determine whether a particular act was foreseeable. *Id.* at 972. A substantial factor in the determination of duty relates to the number, nature, and location of similar incidents. *Id.* at 973.

■ Applying such a test, we cannot glean from the designated evidence that there were any circumstances that alerted Colonial Motel to Clary's accidental discharge of the handgun. As our supreme court so aptly observed in *Ellis,* in order to rule in the plaintiff's favor on the negligence claim, "we would have to hold that a landowner/invitor has an absolute duty to take reasonable care for the protection of its guests—in effect to be an insurer of the guests' safety. This we are unwilling to do." *Ellis,* 716 N.E.2d at 361. Just as the *Ellis* court declined to impose liability upon the defendant-motel for a criminal attack on a guest committed by a third party that was not foreseeable, we likewise conclude that the designated evidence here fails to support a determination that Clary's accidental shooting of Barbara was foreseeable. Thus, it was error for the trial court to have denied Colonial Motel's motion for summary judgment on the Hoppers' negligence claim.

## CONCLUSION

In light of our disposition of the issues set forth above, we conclude that the trial court properly entered summary judgment for Colonial Motel with respect to the Hoppers' claims against it for nuisance and breach of contract. We note, however, that the trial court erred in denying Colonial Motel's motion for summary judgment on the negligence claim.

Affirmed in part, reversed in part and remanded with instructions that the trial court enter final judgment for Colonial Motel.

NAJAM and MATTINGLY–MAY, JJ., concur.