# FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**MICHAEL L. CARMIN**
**GREGORY A. BULLMAN**
Andrews Harrell Mann Carmin & Parker, P.C.
Bloomington, Indiana

ATTORNEYS FOR APPELLEES:

**PAMELA J. HENSLER**
**SAMANTHA A. SALISBURY**
Clendening Johnson & Bohrer P.C.
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DENNIS SAMPLES, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.  60A01-1312-PL-518 |
| | ) | |
| STEVE WILSON and DONALD & INGRID | ) | |
| BANNON, husband and wife, and RONALD | ) | |
| & EDNA BANNON, husband and wife, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE OWEN CIRCUIT COURT
The Honorable Lori Thatcher Quillen, Judge
Cause No. 60C01-0305-PL-199

**June 30, 2014**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Appellant-Plaintiff Dennis Samples ("Samples") appeals the denial of his motion to correct error, which challenged a judgment in favor of Appellees-Defendants Donald Bannon, Ingrid Bannon, Ronald Bannon, and Edna Bannon (collectively, "the Bannons") upon Samples' complaint for trespass and nuisance. We affirm.

**Issues**

Samples presents two issues for review, which we restate as:

I.      Whether the judgment denying the claim for trespass is contrary to law; and

II.     Whether the judgment denying the claim for nuisance is contrary to law.

**Facts and Procedural History**

Samples owns ten acres of property in Poland, Indiana. From 1990 to 2006, property adjoining Samples' property was owned by Steven Wilson ("Wilson"). Wilson's property sloped downward toward Samples' property, with an elevation drop of approximately twelve feet near the property line. Because Samples' property was at a lower elevation, water flowed downhill from the Wilson property onto the Samples property.

In 1998, Wilson hired excavator Benny Sowers ("Sowers") to enlarge his pond and expand an existing dam. On May 2, 2003, Samples filed his "Verified Complaint [for] Trespass, Nuisance and Storm Water Run-off For Improperly Constructed Dam" against Wilson.

2

In 2006, without giving notice of the pending lawsuit, Wilson conveyed his property to the Bannons. Wilson filed a petition for bankruptcy and received a discharge of indebtedness.

On October 26, 2007, Samples amended his complaint to name the Bannons as defendants. The amended complaint included allegations that the Bannons' dam encroached upon Samples' land; rocks from the encroachment rolled onto Samples' land; the dam had been constructed without a keyway or an emergency spillway; the overflow plug was constructed improperly; the water mark was within a few inches of the top of the dam; and an overflow of water would run to Samples' property, creating standing water. Samples averred that he had lost the use of two acres of his land. He requested an injunction to the Bannons to cease any encroachment and install a proper overflow plug, spillway, and emergency spillway. He also requested monetary damages for the loss of his use of two acres.

A bench trial was conducted on April 10, 2013 and April 11, 2013. At trial, Samples testified that the Bannons' dam protruded onto his land, that two acres of Samples' land near the property line became "swampy" after the dam expansion, and that water "seeped" out the bottom of the dam, "seem[ing] to come from the ground up." (Tr. 28, 35-36.) Wilson and Don Bannon testified that the identified portion of Samples' land had been wet (at least periodically) both before and after the dam expansion and that Samples made use of the area for storage and a burn area both before and after the expansion. Sowers testified that the dam had been constructed with proper components including a keyway (trench) and spillway. He also testified that "it was wet" on Samples' land close to the property line before the dam

3

expansion. (Tr. 105.) He denied that any part of the dam had been configured so as to encroach upon Samples' land. Surveyor David Meier testified that the dam was not encroaching onto Samples' property.

On September 16, 2013, the trial court entered judgment in favor of the Bannons. On October 17, 2013, Samples filed a motion to correct error. On November 4, 2013, the trial court denied the motion to correct error, stating in relevant part: "The Court found the defendants' version of the facts more credible and reliable." (App. 29.) This appeal ensued.

**Discussion and Decision**

Standard of Review

We review the grant or denial of a motion to correct error for an abuse of discretion. Williamson v. Williamson, 825 N.E.2d 33, 44 (Ind. Ct. App. 2005). In his motion to correct error, Samples claimed that he had established his claims for trespass and nuisance despite the trial court's judgment to the contrary.

Samples bore the burden of proving his claims by a preponderance of the evidence and now appeals from a motion to correct error challenging a negative judgment. Accordingly, he must show that the evidence points unerringly to a conclusion different from that reached by the trier of fact, or that the judgment is contrary to law. Wilder-Newland v. Kessinger, 967 N.E.2d 558, 560 (Ind. Ct. App. 2012), trans. denied. "This means that even if we might have taken a different course of action than that which a trial court took, we are bound to review the order, and findings and conclusions for clear error only." Id.

4

Where, as here, the trial court enters findings of fact and conclusions thereon without an Indiana Trial Rule 52 written request from a party, the entry of findings and conclusions is considered to be sua sponte. Dana Companies, LLC v. Chaffee Rentals, 1 N.E.3d 738, 747 (Ind. Ct. App. 2013), trans. denied. Where the trial court enters specific findings sua sponte, the findings control our review and the judgment only as to the issues those specific findings cover. Id. Where there are no specific findings, a general judgment standard applies and we may affirm on any legal theory supported by the evidence adduced at trial. Id.

A two-tier standard of review is applied to the sua sponte findings and conclusions made: whether the evidence supports the findings, and whether the findings support the judgment. Id. Findings and conclusions will be set aside only if they are clearly erroneous, that is, when the record contains no facts or inferences supporting them. Id. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. Id. In conducting our review, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom. Id. We will neither reweigh the evidence nor assess witness credibility. Id.

Trespass

To establish a trespass claim, a plaintiff is generally required to prove two elements: first, the plaintiff must show that he possessed the land when the alleged trespass occurred and, second, the plaintiff must demonstrate that the trespassing defendant entered the land without a legal right to do so. KB Home Indiana Inc. v. Rockville TBD Corp., 928 N.E.2d 297, 308 (Ind. Ct. App. 2010).

5

Samples alleged that one activity giving rise to trespass was the physical encroachment of the dam onto his property. The evidence favorable to the judgment is as follows. Excavator Sowers testified that no part of the dam he had expanded was configured on Samples' land. Meier, a land surveyor, testified that the fence dividing the Samples/Bannon property was within the Bannons' property, the dam ran along the fence, and did not encroach onto Samples' land. The trial court specifically found this testimony to be credible, and we may not reweigh the evidence or assess credibility. Dana, 1 N.E.3d at 747.

On appeal, Samples asserts that the trial court's finding of no encroachment by the dam itself is irrelevant because trespass was committed by casting of water onto his property. The rule known as the "common enemy" doctrine provides that surface water[1] which does not flow in defined channels is a common enemy and that each landowner may deal with it in such manner as best suits his own convenience. Argyelan v. Haviland, 435 N.E.2d 973, 975 (Ind. 1982). The doctrine may apply regardless of the form of action brought by the plaintiff, that is, whether he asserts his claims as an action for negligence, trespass, or nuisance. Luhnow v. Horn, 760 N.E.2d 621, 631 (Ind. Ct. App. 2001). An exception to the common enemy doctrine exists where an owner of land has, by artificial means, thrown or cast water onto his neighbor in unusual quantities so as to amplify the force at a given point or points. Argyelan, 435 N.E.2d at 976. "Whether surface water is collected and cast upon neighboring

---

[1] "Surface water" may be defined as that which is diffused over the natural slope of the ground, but not following a defined course or channel. Long v. IVC Indus. Coatings, Inc., 908 N.E.2d 697, 703 (Ind. Ct. App. 2009).

6

land as a body or collected but diffused before entering neighboring property will be largely a question of fact." Bulldog Battery Corp. v. Pica Investments, Inc., 736 N.E.2d 333, 340 (Ind. Ct. App. 2000).

Samples' theory was that defective construction of the Bannons' dam caused pooling of excess water which then poured onto Samples' property. However, there was explicit testimony that the dam had been constructed with the components Samples alleged to be missing, a keyway (trench) and spillway. There was testimony that the water was properly contained. Also, there is evidence that water did not arrive at Samples' property as a consequence of having been "cast" there. Samples' property was located well below the Bannons' property and received natural water runoff. Another neighboring property drained onto Samples' land, as well.

Although a portion of Samples' land was chronically wet, the evidence does not establish that this was produced by a collecting and casting from the Bannons' dam. There is an abundance of testimony that Samples had a wet area of his property near the property line before the dam expansion and used the subject area both before and after the expansion for storage. Indeed, there is evidence that he increased his use after the dam expansion. According to Wilson, Samples "cleaned up" the area, mowed, and constructed a building after the expansion. (Tr. 148.) This was within the two acres he characterized as unusable.

The trial court's finding in favor of the Bannons on the trespass claim is not contrary to law.

Nuisance

7

Samples also contends that the trial court should have found for him on his nuisance claim. In Indiana, nuisances are defined by statute. Indiana Code Section 32-30-6-6 defines an actionable nuisance as: "Whatever is (1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction to the free use of property; so as essentially to interfere with the comfortable enjoyment of life or property[.]" A public nuisance is that which affects an entire neighborhood or community while a private nuisance affects only one individual or a determinate number of people. Hopper v. Colonial Motel Properties, Inc., 762 N.E.2d 181, 186 (Ind. Ct. App. 2002). A private nuisance arises when it has been demonstrated that one party has used his property to the detriment of the use and enjoyment of another's property. Id.

A nuisance may be a nuisance per se, something which cannot be lawfully conducted or maintained (such as a house of prostitution or an obstruction encroaching upon a public highway) or may be nuisance per accidens, where an otherwise lawful use may become a nuisance by virtue of the circumstances surrounding the use. Id. Whether something is a nuisance per se is a question of law, and whether something is a nuisance per accidens is a question for the trier of fact. Wernke v. Halas, 600 N.E.2d 117, 120 (Ind. Ct. App. 1992). "[T]he relevant inquiry is whether the thing complained of produces such a condition as in the judgment of reasonable persons is naturally productive of actual physical discomfort to persons of ordinary sensibility, tastes, and habits." Wendt v. Kerkhof, 594 N.E.2d 795, 797 (Ind. Ct. App. 1992).

8

Here, Samples did not prevail upon his allegation of a private, <u>per</u> <u>accidens</u>, nuisance by virtue of an improperly constructed dam. In essence, the trial court found that the Bannons did not use their property to the detriment of Samples' use and enjoyment of his property. This conclusion has evidentiary support. There was testimony that the Bannons' dam was constructed with proper components, that there had been no "overtopping" or failure since the Bannons' ownership, and that even when the spillway activated, water did not come within a foot of the top of the dam. (Tr. 178, 185.) A Department of Natural Resources inspection of the dam had been conducted, with no order for modification issued. Various witnesses testified that the wetness on Samples' land had pre-existed the dam expansion, and Samples had consistently used the affected area in the same manner before and after the dam expansion.

Samples' insistence that "prior to the creation and later enlargement of the dam by Steve Wilson, Samples had enjoyed the full use of the property with no limitations based on any water problem stemming from the Wilson property," Appellant's brief at 22, is an invitation to reweigh the evidence. We decline to do so. The trial court's finding in favor of the Bannons on the nuisance claim is not contrary to law.

**Conclusion**

The trial court's judgment in favor of the Bannons is not contrary to law. Samples did not establish his entitlement to injunctive relief or damages.

Affirmed.

KIRSCH, J., and MAY, J., concur.

9