FILED

Oct 30 2019, 7:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kathy Salyer, | October 30, 2019 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 19A-PL-243 |
| v. | Appeal from the Ripley Circuit Court |
| Washington Regular Baptist Church Cemetery, | The Honorable Ryan J. King, Judge |
| *Appellee-Defendant,* | Trial Court Cause No. 69C01-1703-PL-9 |
| and | |
| Kristy Sams, | |
| *Appellee-Intervening Party.* | |

**Altice, Judge.**

## Case Summary

[1] Kathy Salyer filed a complaint against the Washington Regular Baptist Church Cemetery (the Cemetery) seeking to have a gravesite she purchased returned to

her after the Cemetery sold the gravesite a second time and another individual was buried there. Following a bench trial, the trial court awarded Salyer an open gravesite rather than the gravesite she had purchased over thirty years prior that had since been mistakenly resold for the burial of another. On appeal, Salyer presents two issues, which we consolidate and restate as: Did the trial court abuse its discretion in ordering the Cemetery to provide Salyer with a different gravesite rather than ordering the Cemetery to have the individual buried in the gravesite she had previously purchased reinterred elsewhere so as to restore the gravesite for her use?

[2] We affirm.

## Facts & Procedural History

[3] In April 1982, after the death of her first husband, Salyer purchased four contiguous gravesites in the Cemetery that comprised Lot 14. In August 1982, Salyer purchased an additional gravesite (Gravesite 15) contiguous to Lot 14 on its north end. Salyer possessed a Certificate of Ownership for each purchase.

[4] Moving south from Gravesite 15, Salyer's father was buried in the next site (i.e., the northern end of Lot 14), her first husband was buried in the next, the next site was empty, and Salyer's second husband was buried in the last gravesite (i.e., the southern end of Lot 14). Salyer intended to bury her mother in Gravesite 15 and to have herself buried in the empty site between her first and second husbands.

[5] In early 2014, Salyer noticed that a person named Lowell Johnson had been buried in Gravesite 15. Salyer contacted the Cemetery, which eventually acknowledged that it had made a "mistake" in that it had inadvertently sold Gravesite 15 twice, first to Salyer (in 1982) and later for the burial of Johnson. *Transcript Vol. 2* at 45. Anita Rahe, who sold Gravesite 15 to Johnson's family, testified that Salyer's purchase of Gravesite 15 was not properly recorded in the Cemetery's records and thus, such was overlooked when she was trying to find an open gravesite for Johnson that was near his family.[1]

[6] Salyer also spoke with Tom Brunner, the gravedigger for the Cemetery, who told her that a mistake in burial occasionally happens, but that, in his experience, when made aware of the mistake, a cemetery will either give the aggrieved party a new grave or move the person who was buried in the wrong grave. Salyer requested that the Cemetery relocate Johnson. However, due to objections by Johnson's family, the Cemetery took no action.

[7] On May 18, 2015, Salyer filed a small claims action against the Cemetery requesting an order that the Cemetery move Johnson and restore Gravesite 15 to her. Kristy Sams, Johnson's daughter, intervened because she did not want her father moved. While the action was pending, Salyer's mother passed away in December 2015. Because Johnson was already buried in Gravesite 15, Salyer had to make other arrangements. She decided to have her mother's

---

[1] Johnson's father and other family members are buried in the three gravesites directly north of Gravesite 15.

remains cremated and buried in the gravesite with her father. This, however, did not change Salyer's desire to have Gravesite 15 returned to her.

[8]     At a bench trial on April 15, 2016, the Cemetery acknowledged it had mistakenly sold Gravesite 15 twice, first to Salyer and then to Johnson's family, and that Johnson was buried in Gravesite 15. The small claims court did not order the Cemetery to move Johnson, but rather, ordered the Cemetery to refund the seventy-five dollars Salyer paid for Gravesite 15 and give Salyer an open gravesite directly to the south of Lot 14. Salyer filed a motion to correct error, claiming the court's solution was contrary to Ind. Code § 23-14-59-2, which outlines the duties of a cemetery in the case of a wrongful burial. The small claims court denied the motion, and Salyer appealed. This court did not reach the merits of Salyer's claim, but rather, reversed and remanded for transfer to the court's plenary docket, holding that the small claims court lacked jurisdiction to grant Salyer either a gravesite adjacent to Lot 14 or to order Johnson to be moved from Gravesite 15 as small claims courts do not have jurisdiction to order specific performance or injunctive relief. *See Salyer v. Wash. Regular Baptist Church Cemetery*, 63 N.E.3d 1091, 1095-96 (Ind. Ct. App. 2016).

[9]     On remand, the matter was transferred to the Circuit Court of Ripley County. The trial court held a bench trial on November 7, 2018. Salyer asserted that, pursuant to I.C. § 23-14-59-2, the court was required to order that Johnson's body be moved from Gravesite 15 to correct the Cemetery's mistake. The Cemetery wanted the trial court to fashion an equitable remedy that did not involve disinterring Johnson. Because Sams did not appear at this hearing, the

court continued the matter to December 19, 2018, in order to provide her with an opportunity to make a statement, which she did, requesting that her father (Johnson) not be moved and permitted to "rest in peace." *Transcript* at 107.

[10] On January 15, 2019, the trial court entered its judgment, including the following relevant findings:

> 3) Plaintiff Salyer testified that the burial was wrongful and that the [] Cemetery committed the wrongdoing.
>
> 4) Cemetery officials testified that Plaintiff Salyer marked off the gravesites, as that was the customary practice, and [Salyer] committed the error. Further, at times Plaintiff Salyer has said that she had marked off her own sites, but at other times she said she had not. Clearly, [Salyer] had involvement with the [Markers]. In sum, the evidence is such that the Court can make no definite determination as to who set the [Markers] – whether it was the [C]emetery or Plaintiff Salyer. Any wrongful burial appears to have flowed from the [M]arkers being mis-set.
>
> 5) In addition to the confusion over who set the [M]arkers, is the confusion as to where [Lot] 14 and [Lot] 15 began and/or ended. It appears that an old access road caused significant burial site confusion. This serves to compound the confusion regarding the [M]arkers.
>
> 6) Plaintiff Salyer testified that the matter could be "corrected" by either removing Lowell Johnson's body or paying her $20,000. If paid $20,000, the Plaintiff would consider the matter "corrected"

and her requested exhumation of Mr. Johnson would not be necessary.[2]

7) Tom Brunner, an experienced gravedigger, testified that in similar instances the matter has been "corrected" by either removing the body or by providing the aggrieved party with a similar burial plot.

8) The Plaintiff provided no specific reason as to what makes the Lowell Johnson burial site significant to her other than her belief that she is entitled to it. On the other hand, removing Lowell Johnson from being next to his parents and his grandson (Intervenor's son) would be extremely traumatic to Intervenor.

*Appellant's Appendix Vol. Two* at 12. Based on these findings, the trial court made the following conclusion: "To the extent that the burial was wrongful, there is no showing as to who set the [M]arkers and, therefore, no showing who committed such wrongdoing." *Id.* The trial court then entered its judgment as follows:

(1) [Salyer] has failed to show that the wrongful burial was committed by the cemetery, in that there is at least equal evidence in the record that [Salyer] set the [M]arkers thereby causing the error;

(2) Irrespective of who is responsible for any purported "wrongful burial", in order to "correct" this error and/or dispute the Court **AWARDS** [Salyer] the open adjacent burial site just South of her

---

[2] Salyer's request in this regard was to cover the legal expenses she had incurred in trying to have Gravesite 15 restored to her.

> 2nd husband, Bart Salyer's, burial site. This burial site is to be
> free of charge and duly recorded as such by the [Cemetery].

*Id.* at 12-13 (emphasis in original). Salyer now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

[11] We begin by noting that neither the Cemetery nor the intervenor filed a brief in response to Salyer's appellate arguments, and therefore we will not undertake the burden of developing arguments for them. *Jenkins v. Jenkins*, 17 N.E.3d 350, 351 (Ind. Ct. App. 2014). Instead, we apply a less stringent standard of review and will reverse upon a showing of prima facie error, which is error "at first sight, on first appearance, or on the face of it." *Orlich v. Orlich*, 859 N.E.2d 671, 673 (Ind. Ct. App. 2006). However, to determine whether reversal is required, we are still obligated to correctly apply the law to the facts in the record. *Jenkins*, 17 N.E.3d at 352.

[12] Where, as here, the trial court entered findings sua sponte after a bench trial, the findings control our review and judgment only as to those issues specifically referenced in the findings. *See Samples v. Wilson*, 12 N.E.3d 946, 949-50 (Ind. Ct. App. 2014). When the trial court does not make specific findings on an issue, we apply a general judgment standard, and we may affirm on any legal theory supported by the evidence adduced at trial. *Id.* at 950.

> A two-tier standard of review is applied to the sua sponte findings
> and conclusions made: whether the evidence supports the

findings, and whether the findings support the judgment. Findings and conclusions will be set aside only if they are clearly erroneous, that is, when the record contains no facts or inferences supporting them. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. In conducting our review, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom. We will neither reweigh the evidence nor assess witness credibility.

*Id.*

[13] Salyer argues that the trial court erred in concluding that she failed to prove the Cemetery committed a wrongful burial and takes issue with the court's suggestion that she might be partly to blame for the wrongful burial. Assuming without deciding that Salyer is correct—i.e., the trial court should have determined that the Cemetery, not Salyer, was responsible for the reselling of Gravesite 15 to Johnson's family for his burial—we find no error with the trial court's resolution of the matter.

[14] This is a matter of statutory interpretation. Our standard of review for issues that require us to interpret a statute is well-settled:

A question of statutory interpretation is a matter of law. In such interpretation, the express language of the statute and the rules of statutory interpretation apply. We will examine the statute as a whole, and avoid excessive reliance on a strict literal meaning or the selective reading of words. Where the language of the statute is clear and unambiguous, there is nothing to construe. However, where the language is susceptible to more than one reasonable interpretation, the statute must be construed to give effect to the legislature's intent. The legislature is presumed to

> have intended the language used in the statute to be applied logically and not to bring about an absurd or unjust result. Thus, we must keep in mind the objective and purpose of the law as well as the effect and repercussions of such a construction.

*Nash v. State*, 881 N.E.2d 1060, 1063 (Ind. Ct. App. 2008), *trans. denied*.

[15] Our legislature set out the duties of a cemetery upon a wrongful burial in relevant part as follows:

> When a wrongful burial, entombment, inurnment, disinterment, disentombment, or disinurnment referred to in section 1(1), . . . of this chapter occurs, the cemetery owner *shall*:
>
>> (1) at the expense of the cemetery owner, *correct* the wrongful burial, entombment, inurnment, disinterment, disentombment, or disinurnment as soon as practical after becoming aware of the error;

I.C. § 23-14-59-2 (emphasis supplied). A cemetery is also required to give notice to specified individuals associated with the individual buried in the wrong grave. While our legislature has provided that cemeteries "shall . . . correct" a wrongful burial, the legislature also granted cemeteries immunity for any such wrongful burial. *See* I.C. § 23-14-59-1(1) ("A cemetery owner or anyone acting on behalf of a cemetery owner is *not liable in any action for* . . . a burial, entombment, or inurnment in the wrong lot, grave, grave space, burial space, crypt, crypt space, or niche.") (emphasis supplied).

[16] We begin by recognizing that the purchase of a gravesite is a real estate transaction. I.C. § 23-14-33-6 defines a burial right as "a right of interment,

entombment, or inurnment granted by the owner of a cemetery and unless otherwise stated in the deed, certificate, or license given by the owner of the cemetery, is an easement for the specific purpose of burial." Consistent with this provision, the certificates of ownership for Salyer's purchases of Lot 14 and Gravesite 15 evidence that Salyer was "entitled to the use of [said gravesites] in fee simple for burial purposes only." *Exhibit Index* at 4, 6 (Plaintiff's Exhibits 1 and 2).

[17] Indiana courts generally order specific performance of contracts for the purchase of real estate. *See Kesler v. Marshall*, 792 N.E.2d 893, 896 (Ind. Ct. App. 2003), *trans. denied*. They do so because each piece of real estate is considered unique, without an identical counterpart anywhere in the world. *See id*. This is especially true with regard to the purchase of gravesites, which may be selected as final resting places for specific loved ones. Indeed, here, Salyer testified that she intended to bury her mother in Gravesite 15 because it was next to her father's gravesite.

[18] By using the word "shall" in I.C. § 23-14-59-2, the legislature expressed its intention that a cemetery is required to "correct" a wrongful burial. The operative word we must give effect to is the word "correct." To correct is "to set or make true, accurate, or right; remove the errors or faults from." *See* *https://www.dictionary.com/browse/correct?s=t* (last visited October 10, 2019). Salyer maintains that to "correct" its error, the Cemetery must exhume Johnson from Gravesite 15 so that Gravesite 15 is available for her use. We disagree.

[19] An order that a cemetery owner perform its duty to correct a wrongful burial as mandated by I.C. § 23-14-59-2 constitutes an order for specific performance, which is an equitable remedy. *See Kesler*, 792 N.E.2d at 896. The power of a court to compel specific performance is an extraordinary power and as such, is not available as a matter of right. *Id*. The decision whether to grant specific performance is a matter within the trial court's discretion. *Id*. We will find an abuse of discretion where the trial court's decision is clearly against the reasonable deductions which may be drawn from the facts before the court. *Id*.

[20] There is no easy solution here. The Cemetery sold Gravesite 15 to two different purchasers, neither of whom can be faulted for the circumstances that now must be resolved. On one side, Salyer purchased Gravesite 15 in 1982, and such was mistakenly sold a second time for Johnson's burial. Regrettably, because of the Cemetery's mistake, Salyer had to make the decision to have her mother cremated so her mother could be buried in the same gravesite as Salyer's father in order to accomplish her desire that her parents be buried close to one another. Thus, at this point, returning Gravesite 15 to Salyer would have no practical benefit to her, but would serve only to affirm that Salyer purchased Gravesite 15 first. On the other hand, Johnson's family purchased a gravesite for Johnson's burial that, unbeknownst to them, was not available. Gravesite 15 was adjacent to other members of Johnson's family and there was no evidence that there is another gravesite similarly situated.

[21] The trial court was presented with the delicate and difficult task of balancing the equities of the parties under grievous circumstances. In doing so, the trial

court considered that Salyer provided "no specific reason as to what makes [Gravesite 15] significant" given that her plans for Gravesite 15 had changed in that she had to make alternate arrangements for the burial of her mother. *Appellant's Appendix Vol. Two* at 12. The trial court weighed this consideration against the fact that to move Johnson from Gravesite 15 "would be extremely traumatic" for Johnson's daughter. *Id.* In other words, given the circumstances as they currently exist, requiring the Cemetery to move Johnson would unnecessarily exacerbate and prolong the emotional toll on all involved. Considering the equities, we conclude that the trial court did not abuse its discretion in fashioning a remedy that required the Cemetery to "correct" its mistake by giving Salyer an open, adjacent burial site at the south end of Lot 14 free of charge.

[22]    Judgment affirmed.

Vaidik C.J., concurs.

Kirsch, J., dissents with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

Kathy Salyer,

*Appellant-Plaintiff,*

v.

Washington Regular Baptist
Church Cemetery,

*Appellee-Defendant,*

and

Kristy Sams,

*Appellee-Intervening Party.*

Court of Appeals Case No.
19A-PL-243

**Kirsch, Judge, dissenting.**

[1]     I respectfully dissent.

[2]     "First in time, first in right" has long been a foundational legal principle.  It
        should be applied in this instance to return the cemetery plot, which the

Washington Regular Baptist Church Cemetery ("the Cemetery") wrongfully sold a second time to Kristy Sams, to its rightful owner, Kathy Salyer.

[3]     In April of 1982, Salyer purchased four adjacent gravesites in the Cemetery. In August of 1982, she purchased a fifth site ("Gravesite 15") adjacent to the four which she already owned. Her intent was to have adjacent gravesites for her family. Unbeknownst to Salyer, the Cemetery sold Gravesite 15 a second time to Sams. At trial, the Cemetery acknowledged its error.

[4]     Indiana Code section 23-14-59-2 sets out the duty owed by a cemetery upon wrongful entombment. It provides, in operative part, as follows:

> When a wrongful burial, entombment, inurnment, disinterment, disentombment, or disinurnment referred to in section 1(1), 1(2), 1(4), or 1(5) of this chapter occurs, the cemetery owner shall:
>
> (1) at the expense of the cemetery owner, correct the wrongful burial, entombment, inurnment, disinterment, disentombment, or disinurnment as soon as practical after becoming aware of the error . . . .

[5]     The Cemetery failed to carry out its duty under the foregoing statute. I would remand to the trial court with instructions to order the corrective action imposed by our legislature.