## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 05 2018, 9:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Karen A. Wyle
Bloomington, Indiana

ATTORNEY FOR APPELLEE

Michael L. Carmin
Carmin Parker, P.C.
Bloomington, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Centennial Park, LLC, <br> *Appellant-Defendant,* <br><br> v. <br><br> Highland Park Estates, LLC, <br> *Appellee-Plaintiff* | December 5, 2018 <br><br> Court of Appeals Case No. 18A-PL-764 <br><br> Appeal from the Monroe Circuit Court <br><br> The Honorable Frank M. Nardi, Special Judge <br><br> Trial Court Cause No. 53C01-1708-PL-1703 |

**Baker, Judge.**

[1]    Centennial Park, LLC (Centennial Park), appeals the trial court's order granting the request of Highland Park Estates, LLC (Highland Park), for a permanent injunction. Centennial Park argues that the trial court erred by finding that its use of a lot in the Highland Park subdivision violated multiple restrictive covenants and that the entry of an injunction was erroneous. Finding no error, we affirm.

## Facts

[2]    In the late 1970s, Robert Crider filed a plat with the Monroe County Plan Commission for Phase 1 of Highland Park, a residential subdivision. The plat includes two relevant restrictions. First, Note 1 states that "[n]o parcels shall be dedicated as parks, schools, playgrounds, or other community purposes within section 1." Appealed Order p. 2. Second, Paragraph G states that nothing shall be done on any lot "which may be or become an annoyance or nuisance to the neighborhood." *Id.* The final plat was recorded in 1977 and showed that the subdivision runs roughly north and south along Centennial Drive, which connects to State Road 46 on the south and ends in a cul de sac on Lot 15 and next to Lot 16 on the north.

[3]    On December 21, 2016, Centennial Park acquired thirty acres of real estate directly north of Highland Park from Gil Mordoh. Centennial Park has only one point of ingress and egress, which is a roadway through the Woodgate subdivision, located directly to the west. Mordoh had attempted to prove that there was an easement from the cul de sac to the planned Centennial Park

subdivision so that an access road could be built there, but a trial court found that no such easement existed. Mordoh then attempted to purchase an easement from Crider, but Crider declined. When Centennial Park acquired the real estate, it was aware of this history.

[4] The original developer of Highland Park planned to develop a parcel of real estate located directly east of Phase I. Highland Park is now in the process of developing Phase II. When Phase II is complete, it will have multiple roadways connecting to Centennial Park. Highland Park offered an easement to Centennial Park so that Centennial Park could build an access road in one of these locations sooner than Highland Park was prepared to do so.

[5] Rather than waiting for Highland Park to build the Phase II access roadways or accepting the easement to build a roadway itself, Centennial Park purchased Lot 15 in Highland Park—the lot that contains the cul de sac. Centennial Park then asked the Town of Ellettsville to annex Lot 15, and on May 22, 2017, the town did so. On June 6, 2017, Centennial Park granted Ellettsville a fifty-foot-wide easement and right of way over the western side of Lot 15, creating a connection between the cul de sac at the north end of Centennial Drive and the Centennial Park subdivision.

[6] Centennial Park installed a construction road across Lot 15, using it to access Centennial Park from the cul de sac. It ultimately intends to build a permanent roadway connecting Centennial Park and Centennial Drive. This process has caused damage and nuisance to the owner of Lot 16. Her mailbox has been

knocked down three times, the construction traffic has blocked access to her driveway, and the construction traffic has torn up the cul de sac and spread mud over the roadway. The owner of Lot 16 testified that one of the reasons she purchased Lot 16 was precisely because it was located on a cul de sac, which is a safe area for her children to play and ride their bikes.

[7] On August 3, 2017, Highland Park filed a complaint against Centennial Park, seeking an injunction to prevent Centennial Park from using Lot 15 as a public right of way or construction road. The trial court held an evidentiary hearing on December 7, 2017, and ruled in favor of Highland Park on February 28, 2018. In pertinent part, the trial court found and concluded as follows:

> 11. [Centennial Park's] actions have negatively impacted the area around the cul-de-sac . . . .
>
> 12. If [Centennial Park] is allowed to install a permanent roadway from [its] development to the cul-de-sac, the traffic from [Centennial Park's] development as well as other subdivisions connected to Centennial Park, consisting of approximately two hundred residential lots, will be funneled through the cul-de-sac to connect with Centennial Drive and eventually State Road 46. . . . [Centennial Park's] actions will transform the original cul-de-sac into a major direct thoroughfare, thus dramatically altering the nature of the roadway and the neighborhood.
>
> ***
>
> *Conclusions of Law*

9.    [Centennial Park's] construction of an access road across Lot 15 to Centennial Park, [its] grant of an ingress egress easement to the Town of Ellettsville, and [its] intention to construct a reverse "S" curve in the roadway violate the restrictions contained in the plat because these acts dedicate a portion of Lot 15 to a community purpose.

10.    These same acts . . . also violate Covenant G insofar as they constitute an annoyance or nuisance to the neighborhood. . . .

Appealed Order p. 4-6. The trial court enjoined Centennial Park from dedicating Lot 15 or any part thereof for a community purpose, including as a public right-of-way or thoroughfare connecting Highland Park and Centennial Park. It also ordered Centennial Park to cease using the construction road and restore Lot 15 to a use that conforms with the restrictive covenants in the Highland Park plat. Centennial Park now appeals.

## Discussion and Decision

[8]    Centennial Park argues that the trial court erred by finding that its current and planned future uses of Lot 15 violate two restrictive covenants that apply to Lot 15. It also argues that an injunction is unwarranted.

## I.  Standard of Review

[9]    Highland Park requested special findings and conclusions pursuant to Indiana Trial Rule 52(A). Therefore, in reviewing the judgment, we must determine

whether the evidence supports the findings and whether the findings support the conclusion and judgment. *E.g.*, *Old Utica Sch. Preservation, Inc. v. Utica Twp.*, 46 N.E.3d 1252, 1256 (Ind. Ct. App. 2015). We view the evidence in the light most favorable to the judgment. *Id.* at 1257. We will reverse only if the judgment is clearly erroneous, meaning that it is unsupported by the findings of fact and conclusions on the findings. *Mueller v. Karns*, 873 N.E.2d 652, 657 (Ind. Ct. App. 2007).

[10] The interpretation of a restrictive covenant is an issue of law to which we apply a de novo standard of review. *Drenter v. Duitz*, 883 N.E.2d 1194, 1199 (Ind. Ct. App. 2008).

[11] The grant or denial of an injunction is within the trial court's discretion and we will reverse only if the decision is arbitrary or against the logic and effect of the facts and circumstances before the trial court. *Ins. Co. of N. Am. v. Home Loan Corp.*, 862 N.E.2d 1230, 1233 (Ind. Ct. App. 2007).

## II. Restrictive Covenants

[12] A restrictive covenant is an express contract between grantor and grantee that restrains the grantee's use of the land. *Villas W. II of Willowridge Homeowners Ass'n, Inc. v. McGlothin*, 885 N.E.2d 1274, 1278 (Ind. 2008). These covenants "control many aspects of land, including what may be built on the land (fence or above ground pool), how the land may be used (private or commercial), and alienability of the land." *Id.* Restrictive covenants are used to maintain or enhance the value of land by reciprocal undertakings that restrain or regulate

groups of properties; they are common in housing subdivisions. *Id.* at 1278-79. A restrictive covenant in a plat is a covenant running with the land that creates a property right in each grantee and subsequent grantee of a lot in the plat subject to the restriction. *Pulos v. James*, 261 Ind. 279, 283, 302 N.E.2d 768, 771 (Ind. 1973).

[13]  We strictly construe restrictive covenants and resolve all doubts in favor of the free use of property and against restrictions. *Drenter*, 883 N.E.2d at 1199. When the language in a restrictive covenant is ambiguous, we endeavor to give effect to the actual intent of the parties at the time the covenant was made, as determined from the whole instrument construed in connection with the circumstances surrounding its execution. *Id.* We consider ambiguous and unambiguous language together and apply the most reasonable interpretation. *Id.*

[14]  First, we must determine whether Centennial Park's current and planned future uses of Lot 15 violate any restrictive covenants. As noted above, there are two relevant restrictive covenants in the final plat to consider:

- Note 1 states that "[n]o parcels shall be dedicated as parks, schools, playgrounds, or other community purposes within section 1." Appealed Order p. 2.
- Paragraph G states that nothing shall be done on any lot "which may be or become an annoyance or nuisance to the neighborhood." *Id.*

Centennial Park argues that Note 1 should not be considered as a restrictive covenant because it was placed separately from the block of text containing

covenants and restrictions. This elevates form over substance. Whether or not the Note was labeled as a "covenant" or "restriction" is not determinative of its character. It is apparent that the nature of Note 1 is restrictive regarding the future use of the subdivision property. Consequently, we find that both Note 1 and Paragraph G are restrictive covenants.

[15] With respect to Note 1, Centennial Park contends that its use of Lot 15 does not constitute a community purpose. Specifically, it argues that its grant of an easement to Ellettsville does not constitute the use of a "parcel," because "parcel" means the entire lot but the easement only amounts to a portion of Lot 15. We do not find this argument persuasive. Centennial Park's grant of an easement to Ellettsville is part and parcel, so to speak, of its use of Lot 15 as a whole. Under Centennial Park's argument, if a homeowner used only a portion of her lot for a park, school, or playground, it would not violate Note 1 because it did not use the whole lot for that purpose. Such an interpretation would render Note 1 meaningless, and we decline to interpret it in such a fashion.

[16] As to whether the grant of an easement to Ellettsville for the purpose of constructing a public thoroughfare constitutes a community purpose, Centennial Park argues that a road is unlike parks, schools, or playgrounds. It does not explain why or how such a distinction can be made, nor can we discern one. Construction of a public roadway constitutes a "community purpose," under a common understanding of those terms, given that its purpose is transportation by the general public—i.e., the community. Therefore, we

find that the grant of an easement to Ellettsville of a portion of Lot 15 violates the restrictive covenant found in Note 1.

[17] With respect to Paragraph G, Centennial Park argues that its grant of an easement to Ellettsville, its plan to construct a road connecting Centennial Park and Highland Park on Centennial Drive, and its use of a portion of Lot 15 as a construction road do not constitute an "annoyance or nuisance" to the neighborhood. The plain and ordinary meaning of "annoyance" is "the act of annoying someone or of being annoyed," *Merriam-Webster*, https://www.merriam-webster.com/dictionary/annoyance, and the plain and ordinary meaning of "annoying" is "causing vexation or irritation," *id.*, https://www.merriam-webster.com/dictionary/annoying. The plain and ordinary meaning of "nuisance" is "harm, injury; one that is annoying, unpleasant, or obnoxious[.]" *Id.*, https://www.merriam-webster.com/dictionary/nuisance.[1]

[18] The record contains the following relevant evidence regarding Centennial Park's current and planned future uses of Lot 15:

---

[1] We disagree with Centennial Park's the-sky-is-falling concern that applying the plain and ordinary definition of these terms would put "every lot owner at perpetual risk of conflict and litigation at the whim of every other and thus significantly diminishing every owner's property rights." Appellant's Br. p. 26. As in all contracts cases, the sensible and fair approach is to apply the plain and ordinary meanings to unambiguous terms that are not otherwise defined in the document. *E.g.*, *Care Group Heart Hosp., LLC v. Sawyer*, 93 N.E.3d 745, 752 (Ind. 2018).

- The final Highland Park plat depicted a cul de sac on Lot 15. Other property owners, including the owner of Lot 16, purchased their lots in reliance on the cul de sac as a closed end street.
- Installing a road cutting through Lot 15 will increase traffic flow, as well as increase the risk of higher speeds.
- Specifically, the proposed road will connect as many as 200 lots to Centennial Drive and would generate 780 to 2,000 extra vehicle trips per day on a road that was designed to be a cul de sac.
- The construction road on Lot 15 has caused property damage to Lot 16, including knocking down the owner's mailbox three times. It has also blocked a driveway, created mud and debris on the roadway, and caused the cul de sac to be torn up and repaired multiple times. Previously, the cul de sac was a safe place for children to play and ride their bikes, but that is no longer the case, nor would it be the case if the permanent road is constructed.

This evidence readily supports the trial court's conclusion that Centennial Park's actions, including the current construction road and the future permanent roadway, constituted an annoyance or nuisance to the neighborhood. Centennial Park directs our attention to other evidence in the record suggesting that traffic will not be a problem, but this is a request that we reweigh the evidence in the record, which we may not do; we must consider only the evidence most favorable to the judgment.

Centennial Park also argues that Highland Park's plan to construct a road in a different part of the neighborhood belies its claim that a road on Lot 15 constitutes an annoyance or nuisance. We disagree, as the final plat depicted Lot 15 with a cul de sac. Other planned areas of construction do not contain a cul de sac. Moreover, the construction of the other roadways has always been a part of the overall planned design of Highland Park. It is undisputed that there

is no easement contained on Lot 15 for a road, whereas another part of the neighborhood does contain such an easement. Under these circumstances, the current and planned future use of Lot 15 is an annoyance or nuisance even though other areas of the neighborhood may be put to such a use.

[20] In sum, we find that the trial court did not err by concluding that Centennial Park's current and future planned uses of Lot 15 violated two restrictive covenants contained within the final plat for Highland Park.

## III. Injunctive Relief

[21] Having found that these uses of Lot 15 violate the restrictive covenants, we must determine whether the trial court properly found that injunctive relief is warranted. When considering whether to grant permanent injunctive relief, we must examine four factors: (1) whether the plaintiff's remedies at law are adequate; (2) whether the plaintiff has succeeded on the merits; (3) whether the threatened injury to the plaintiff outweighs the threat of harm if the injunction is granted; and (4) whether the public interest would be disserved by granting the injunctive relief. *Ferrell v. Dunescape Beach Club Condos. Phase I, Inc.*, 751 N.E.2d 702, 712 (Ind. Ct. App. 2001). The plaintiff's remedies at law are inadequate where certain and irreparable harm would be caused if the injunction is denied. *Id.* at 713. A permanent injunction must be narrowly tailored so that its scope is not more extensive than is reasonably necessary to protect the interest of the party in whose favor it is granted. *Id.*

[22] First, regarding Highland Park's remedies at law, we agree with Highland Park that the creation of a public roadway through the cul de sac "would be a continuing and ongoing nuisance or annoyance in perpetuity" and that "[t]here is no reasonable measure of damages to be determined for [the owners of lots in Highland Park, including the Lot 16 owner,] if Centennial Park is allowed to alter the use from the residential lot to a major thoroughfare road carrying two thousand (2,000) vehicles per day." Appellee's Br. p. 16. In other words, certain and irreparable harm would result to Highland Park if the injunction is denied, meaning that its remedies at law are inadequate.

[23] Second, we have already found that Highland Park succeeded on the merits of its claim that Centennial Park's current and future planned uses of Lot 15 violate two restrictive covenants. Third, the threatened injury to Highland Park is substantial, whereas the threat of harm to Centennial Park if the injunction is granted is minimal. As noted above, when Centennial Park purchased Lot 15, it did so knowing that a trial court had already found that no easement on that lot existed. Moreover, Highland Park has always planned to construct roadways *in other locations* connecting Centennial Park to Highland Park, and even offered an easement to Centennial Park so that it could begin construction of such a roadway sooner than Highland Park planned to do so. Therefore, this factor weighs in favor of Highland Park.

[24] Finally, the public interest is not disserved by granting this injunction. Homeowners in Highland Park purchased their lots in reliance on the final plat, which depicted a cul de sac on Lot 15. To permit the construction of a

thoroughfare in that location in violation of multiple restrictive covenants would cause great uncertainty for property owners.

[25] Therefore, we find that the trial court did not err by granting Highland Park's request for an injunction preventing Centennial Park from dedicating Lot 15 or any part thereof for a community purpose, including as a public right-of-way or thoroughfare connecting Highland Park to Centennial Park. It also did not err by ordering Centennial Park to cease using the construction road and restore Lot 15 to a use that conforms with the restrictive covenants in the Highland Park plat.

[26] The judgment of the trial court is affirmed.

May, J., and Robb, J., concur.