**FILED**

Oct 04 2019, 5:29 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANTS

Daniel P. Bowman
Office of Corporation Counsel
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Greg A. Bouwer
Jeff Carroll
Koransky Bouwer & Poracky, P.C.
Dyer, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Metropolitan Development
Commission of Marion County,
Indiana, and The Consolidated
City of Indianapolis/Marion
County, Indiana,

*Appellants*,

v.

George Novogroder,

*Appellee*.

October 4, 2019

Court of Appeals Case No.
18A-MI-2761

Appeal from the Marion Superior
Court

The Honorable Michael D. Keele,
Judge

Trial Court Cause No.
49D07-1804-MI-13798

**Brown, Judge.**

[1] The Metropolitan Development Commission of Marion County, Indiana (the "MDC") and The Consolidated City of Indianapolis/Marion County, Indiana (together with the MDC, "Appellants") appeal the trial court's judgment entered on October 22, 2018 which vacated the decision of the MDC. Appellants raise three issues which we consolidate and revise as whether the trial court erred in entering judgment. We affirm.

## Facts and Procedural History

[2] George Novogroder owns real property northwest of the intersection of East 56th Street and Kessler Boulevard in Indianapolis. In May 1993, an instrument titled Original Commitments was recorded with the Marion County Recorder.[1] The instrument states in part:

> In accordance with I.C. 36-7-4-607,[2] the owner of the real estate . . . makes the following COMMITMENTS concerning the use and development of the parcel of real estate:
>
> * * * * *
>
> 2.      Final site and landscape plan will be submitted to the Administrator for approval prior to any application for an Improvement Location Permit for the construction of the Walgreen Pharmacy. The landscape plan will be similar in nature to that of the Boardwalk Condominium.
>
> * * * * *

---

[1] The instrument stated it was signed by Park Place Associates, Ltd., and Kite Development Corporation.

[2] Ind. Code § 36-7-4-607 relates to a proposal to amend or partially repeal the text of the zoning ordinance.

4.     The proposed pharmacy shall not sell liquor, beer or wine as would be permitted by a pharmacy license issued by the Indiana Alcoholic Beverage Commission nor sell any pornographic literature.

5.     Right-of-way along Kessler Boulevard East Drive shall be dedicated in accordance with the recommendations of the Thoroughfare Plan for Marion County, Indiana . . . upon the written request of the Department of Transportation (DOT).

6.     Site access design and location, including auxiliary lane improvements, and a master circulation plan for the entire property adjacent to the site owned by this Petitioner, shall be approved by DOT prior to obtaining an Improvement Location Permit.

7.     Fast food restaurants, gasoline service stations, massage parlors, or any other businesses involving moral turpitude shall not be permitted.

8.     A sign program for the entire integrated center shall be submitted for Administrator's approval prior to obtaining an Improvement Location Permit.  The sign program shall include only one (1) pole sign no more than twenty-five feet (25') in height.  The pole sign will be located at the corner of 56th Street and Kessler Boulevard.

9.     The proposed new structure shall be occupied only by a Walgreens Drugstore.

10.    The existing retail building shall be renovated on its exterior to coordinate in color with the proposed Walgreen Drugstore.

11.    The same exterior finish shall be used on all sides of the proposed drugstore building.  The exterior shall include brick the same color as the Boardwalk Condominiums.  The rest of the exterior shall be of the same color as the non-brick exterior of said Condominiums.

12.    There will be no floodlights on the Walgreen building.  No parking lot lights will be located north of the Walgreen building.  All parking lot lights will be constructed so that the lighting will be directed toward the interior of the parking lot.

13.     The proposed Walgreen Drugstore shall not be permitted to stay open to the public after midnight or before 6:00 a.m. for at least two (2) years from and after the date of opening the drugstore for business.

14.     An access road to Emerson Way shall not be constructed as a part of the development of the subject real estate as proposed in this rezoning Petition. . . . Neither Walgreen nor the partnership entity developing the Walgreen Drugstore shall contribute economically to the development of an access road from Emerson Way to the northern entrance to the parking lot of the subject real estate.

* * * * *

. . . . These COMMITMENTS may be modified or terminated by a decision of the Metropolitan Development Commission made at a public hearing after proper notice has been given.

COMMITMENTS contained in this instrument shall be effective upon: the adoption of rezoning petition . . . by the City-County Council changing the zoning classification of the real estate from a D-A and C-1 zoning classification to a C-3 zoning classification and shall continue in effect for as long as the above-described parcel of real estate remains zoned to the zoning classification or until such other time as may be specified herein.

Appellants' Appendix Volume 2 at 77-78. The property was rezoned in 1993 to a C-3 zoning classification. Walgreens occupied the building beginning in approximately 1994.

[3]     In June 2014, Walgreens notified Novogroder that it had elected to exercise its option to cancel its lease and that the effective date of the cancellation was to be July 31, 2015.

[4]     In December 2017, Novogroder filed a petition with the MDC. His petition stated the Walgreens had been closed for approximately two and one-half years and requested that, "[a]s Walgreen's has now vacated the Building, . . . certain

Commitments be terminated or modified to allow for the operation of Dollar Tree retail store (and/or other permitted C-3 uses)." *Id*. at 75. He requested the termination of the commitments in paragraphs 9 and 13 and that the commitments in paragraph 11 and 12 be modified.[3] A letter from Ralph Balber filed with the MDC states he was the president and principal broker for ALO Property Group in Indianapolis, the former Walgreens site was not marketable for sale or lease, and the existence of commitments limiting use of the building to a Walgreens made the building virtually worthless. He stated that, in his professional opinion that due to the fact Walgreens closed the location, the commitments referencing "Walgreen's and/or drugstore" have to be terminated in order for the building and site to be occupied by another business, that without terminating the commitments the site will remain vacant, deteriorate, and be subject to vandalism and break-ins, and that the surrounding property values will continue to be negatively impacted.

[5] In March 2018, the MDC held a hearing. Novogroder's counsel stated that the commitments were almost twenty-five years old and the site had been vacant for almost three years. He referenced a Millersville at Fall Creek Valley Village and Corridor Plan (the "Millersville Plan"), which "calls for a mixed use of

---

[3] Novogroder proposed that paragraph 11 be modified to state: "The same exterior finish shall be used on all sides of the existing building. The exterior shall include brick the same color as the Boardwalk Condominiums. The rest of the exterior shall be the same color as the non-brick exterior of said Condominiums." Appellants' Appendix Volume 2 at 75. He proposed that paragraph 12 be modified to state: "There will be no floodlights on the existing building. No parking lights will be located north of the existing building. All parking lot lights will be constructed so that the lighting will be directed toward the interior of the parking lot." *Id*.

neighborhood-office-retail node," that "what we have here today is Dollar Tree would like to go in that store," that the Millersville Plan included appropriate uses including retail sales, and that Dollar Tree is a retail sales use. *Id*. at 21-22. He indicated the Millersville Plan also lists a number of inappropriate uses and that Novogroder would agree not to use the property for those uses, except that a drive-up service window was already part of the building although Dollar Tree does not use such a window.[4] He indicated that there had been a recent break-in, and that there are a number of examples where Walgreens has left its sites and the sites have become Dollar Trees. He argued this is an unusual case, that he had never seen a commitment that restricted a use of real estate to only one user, and that the owner cannot have a tenant until the restriction is removed.

Courtenay Weldon stated that he and his wife owned a neighboring retail center, that his father and aunt had purchased it in 1984, and that he had been managing it since that time.[5] Weldon stated "[w]e started, thought we could develop the land next to it, which was vacant, had a shed filled with rats, and we applied for zoning and got it, and we made a deal with Walgreens," "[w]e

---

[4] Novogroder's materials included slides listing appropriate and inappropriate uses under the Millersville Plan. The inappropriate uses listed include: nursing home; community gardens; residential, detached single-family or two-family; automobile sales/rental/leasing, new/used; automobile washing; boat and RV sales/rental/leasing, new/used; drive-in, drive-thru or drive-up service window (inappropriate if wider than one lane at the point it crosses a pedestrian way); adult entertainment; outdoor commercial recreation or amusement establishment; funeral home; laundry plant, dry-cleaning plant; parking lot (commercial, surface); power/gas substation; radio/TV/satellite/telecommunications tower; safety services (police, ambulance, fire); and self-service storage.

[5] John Weldon signed the Original Commitments on behalf of Park Place Associates, Ltd.

built the store in '94; then we tried to get financing and we couldn't get it," and "[w]e tried insurance companies, savings and loans, and Walgreens found George Novogroder for us that bailed us out; otherwise we would have been in trouble in the building."[6] *Id*. at 27-28. He stated that, since the building was empty and not lighted, people were dumping trash and mattresses in the back, that they lost customers frequenting their center, and that they would like to see the building occupied by Dollar Tree. One of the strip's tenants stated that any tenant in the vacant building would be beneficial.

[7] A number of remonstrators opposed Novogroder's petition. One of the remonstrators stated the City's land use plans originally called for the strip of land to be a buffer between commercial and residential areas, the Walgreens restriction was in place so that the site could not be occupied by a company or organization that would have a negative impact on the greater Millersville neighborhood, the site was important because of its prominent location, and that Dollar Tree projects a negative image. Another remonstrator discussed the Millersville Plan and stated that Dollar Tree does not fit in the plan. The transcript indicates that, when area residents were asked to stand by the president of Millersville at Fall Creek Valley, thirty audience members stood. A City-County Councilor stated that she was with the remonstrators, the

---

[6] Courtenay Weldon submitted a letter stating that he shared common area with Novogroder and they had a cross-easement parking agreement; that, since Walgreens vacated the property, he had nothing but problems with trash and abandoned vehicles and the property was burglarized; and that the commitments which had been made to obtain zoning were so restrictive that he could not get a loan on the Walgreens store.

neighborhood residents were open to other uses but not to Dollar Tree, and "quite frankly, you know, if Mr. Novogroder could not find another tenant, I would suggest that he offer what he did to Danville residents. There was an empty Walgreens store there that he owned, and he offered to donate it to the community for community purposes. And we would be all about that and having that site available for the community." *Id*. at 48-49.

[8] The Staff Report of the MDC's Division of Planning indicated that the staff had no recommendation regarding Novogroder's petition but recommended that, if approved, a five-foot-wide sidewalk be installed along the rights-of-way of East 56th Street and Kessler Boulevard. Novogroder's counsel argued that Dollar Tree was the only tenant to sign a lease, an empty store projects a negative image, and that the commitments are unreasonable, impractical, and perhaps unlawful. The MDC voted to deny Novogroder's petition.

[9] On April 10, 2018, Novogroder filed a petition for judicial review. He also sought a declaratory judgment that a restriction permitting only a Walgreens to occupy the building is unconstitutional. On September 12, 2018, the court held a hearing on Novogroder's petition for judicial review. Novogroder's counsel argued that the language in paragraph 9 of the commitments refers to "[t]he proposed new structure," emphasized that the paragraph pertained to the "structure," noted the language that the structure shall be occupied only by Walgreens, and argued that, "[s]omehow, we bootstrap that into it can only be used . . . by a Walgreens perpetually" and "[t]hat language doesn't say that, it says the building may only be occupied." Transcript Volume 2 at 10. He

argued that "[w]hat that language really meant was that Walgreens was going to occupy the entire building, 'the proposed new structure.'" *Id*. He pointed to paragraph 7 and argued "[w]hy am I banning gas stations if it could be used by a Walgreen's drugstore? it makes no sense." *Id*.

[10] The court stated: "It's your suggestion, . . . is that you may have advised your client, we don't need a modification. As I read and interpret these commitments, a new Dollar Tree can come in because it's [not] one of the prohibited type uses in 7 and the way you read 9 is that the proposed new structure shall be used as a Walgreens and it was." *Id*. at 11. Novogroder's counsel replied: "Yeah, and we can't get a building permit and we can't get an occupancy certificate, so at some point we've got to bring a request 'cause they won't do anything with a building permit or occupancy certificate, so we have to make a petition, they denied it." *Id*. The court stated "I guess another option it would have been, maybe, an administration decision in denying a building permit or a zoning IOP, . . . which could have resulted in an appeal to the BZA," and Novogroder's counsel replied "[y]es, it could have been considered," "[t]he initial approach to the Planning staff was that site may only be used as Walgreens," "so if you're going to have another use, a Dollar Tree, DaVita, a Dollar General, a CVS . . . you've got to get rid of that commitment," and "also then those commitments specify that any modification or termination of them go back before Planning Commission and so that was the route that was directed." *Id*. at 11-12.

On October 22, 2018, the trial court entered Findings of Fact, Conclusions of Law and Judgment which provided in part:

Findings of Fact

\* \* \* \* \*

2. The Real Estate is approximately 1.4 acres in size and is zoned C-3 commercial.

3. The Real Estate is improved with a vacant approximate 13,000 square foot commercial building and associated parking.

4. The Real Estate is surrounded by commercial uses to the west and south, also zoned C-3; commercial offices to the north, zoned C-1; and single-family dwellings to the east, zoned D-P and D-S.

5. Surrounding uses include a retail center, Burger King, Dinius Auto Service Center, Speedway Gas Station, CVS drugstore/pharmacy (across the street), Starbucks, and Hardees.

\* \* \* \* \*

8. The C-3 zoning district permits commercial retail uses.

9. After the 1993 rezoning, Walgreens began leasing the Real Estate for use as a Walgreens drugstore.

10. Walgreens vacated the Real Estate in the summer of 2015 when its lease expired, and the Real Estate has been vacant since that time.

\* \* \* \* \*

21. Dollar Tree is a commercial retail use, a permitted use under the Millersville Plan.

\* \* \* \* \*

Conclusions of Law

1. The court shall grant relief from a zoning decision if the court determines that a person seeking judicial relief has been prejudiced by a decision that is: (a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (b) contrary to constitutional right, power, privilege or immunity; (c) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (d) without observance of procedure required by law; or (e) unsupported by substantial evidence. Ind. Code § 36-7-4-1614. If the court makes such a determination, then the court may set aside a zoning decision and (i) remand the case to the board for further proceedings or (ii) compel a decision that has been unreasonably delayed or unlawfully withheld. Ind. Code § 36-7-4-1615.

2. The Real Estate is zoned C3, allowing commercial retail uses, including a Dollar Tree Store.

3. Although Commitment No. 9 reads that "[t]he proposed new structure shall be occupied only by a Walgreen Drugstore," a contract in Indiana "is to be read as a whole when trying to ascertain the intent of the parties." *Allstate Ins. Co. v. Bradtmueller*, 715 N.E.2d 993, 996 (Ind. Ct. App. 1999). "The court will make all attempts to construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless. The court must accept an interpretation of the contract which harmonizes its provisions as opposed to one which causes the provisions to be conflicting." *Id*.

4. Reading the Commitments as a whole, as the law requires, demands that the Court also consider Commitment No. 7:

> Fast food restaurants, gasoline service stations, massage parlors, or any other businesses involving moral turpitude shall not be permitted.

5. Adopting the MDC's interpretation of the Commitments – i.e. that no business other than a Walgreens Drugstore may occupy the space – would require the Court to disregard Commitment No. 7. There would be no need to document the kind of businesses that cannot occupy the space if the Commitments restricted the Real Estate to a single named occupant.

6. Taking care not to render any provisions of the Commitments meaningless and to harmonize said provisions, Commitment No. 9

established that the Real Estate be occupied by a single tenant or user, which, at that time, was a Walgreen drugstore.

7. The MDC's decision to deny Novogroder's petition for modification of commitments was arbitrary, capricious, an abuse or discretion, or otherwise not in accordance with law.

JUDGMENT

Based on the Findings of Fact and Conclusions of Law above, and the MDC Record, it is hereby ORDERED, ADJUDGED AND DECREED that the decision of the MDC to deny Petition No. 2017-MOD-024 is vacated. The Court hereby remands this case to the MDC for further proceedings consistent with this Order.

Appellants' Appendix Volume 2 at 10-15.

## *Discussion*

The issue is whether the trial court erred in entering its judgment. A commitment is an agreement by a landowner to adhere to a certain restriction. *See Beineke v. Chem. Waste Mgmt. of Ind., LLC*, 868 N.E.2d 534, 539 (Ind. Ct. App. 2007) ("[D]irectives from a zoning agency as part of a zoning request are 'conditions,' and agreements by a landowner to adhere to certain restrictions are 'commitments.'") (citing *Story Bed & Breakfast, LLP v. Brown Cnty. Area Plan Comm'n*, 819 N.E.2d 55, 62 (Ind. 2004) (observing "if a legislative body imposes the restriction, it is a condition, but if it is submitted by the property owner to induce rezoning, it is a commitment")). The parties cite Ind. Code § 36-7-4-1015 and Ind. Code § 36-7-4-1614.

Ind. Code § 36-7-4-1015(a) provides in part that "[a]s a condition to the . . . adoption of a rezoning proposal . . . the owner of a parcel of real property may

be required or allowed to make a commitment concerning the use or development of that parcel." Ind. Code § 36-7-4-1015(b)(5) provides in part that a commitment "may be modified or terminated . . . by a decision of the plan commission or board of zoning appeals to which the commitment was made" and that "[a] decision by a plan commission or board of zoning appeals must be made at a public hearing after notice of the hearing has been provided under the rules of the plan commission or board of zoning appeals, as the case may be." Ind. Code § 36-7-4-1016 states in part that "[t]he following decisions of the plan commission are considered zoning decisions for purposes of this chapter and are subject to judicial review[:] . . . A decision under section 1015 of this chapter (appeal of a commitment modification or termination)." Ind. Code § 36-7-4-1615 provides that, if the court finds that a person has been prejudiced under Ind. Code § 36-7-4-1614, it may set aside a zoning decision and remand the case to the board for further proceedings or compel a decision that has been unreasonably delayed or unlawfully withheld. Ind. Code § 36-7-4-1614(d) provides the court shall grant relief under Ind. Code § 36-7-4-1615 only if it determines that a person seeking judicial relief has been prejudiced by a zoning decision that is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence.

[14] Appellants contend the trial court erred in finding the commitments did not limit use of the structure to a Walgreens. They argue that the trial court's conclusion that adopting the MDC's interpretation of the commitments would render the commitment prohibiting fast food restaurants superfluous is not apparent from the face of the commitments, that the commitments refer to an existing retail building in addition to a proposed new structure, and that paragraph 9 of the commitments is more specific than the prohibition of other businesses in paragraph 7 and the more specific Walgreens restriction controls. They argue that there is no way to evaluate the MDC's decision under the standards at Ind. Code § 36-7-4-1614(d)(1) and (5), that Ind. Code § 36-7-4-1015(b)(5) does not require that MDC follow any particular criteria, and that the MDC did not make, and was not required to make, any findings. They also assert that Novogroder's constitutional claims are barred because he failed to present them to the MDC.

[15] Novogroder maintains the court's judgment should be affirmed. He argues that, contrary to the MDC's assertion, it is clear that paragraph 7 of the commitments referred only to the building at issue, the previous six paragraphs discussed the proposed pharmacy, paragraph 8 discussed signage, and paragraph 10 related to the exterior of the retail center. He notes the use of the modifier "proposed" in the commitments and argues that, "at the time the Commitments were executed, it appears that a Walgreen's tenancy was not a done deal . . . ." Appellee's Brief at 11. He asserts that paragraphs 7 and 9 are not in conflict and the rule of interpretation that a specific provision controls

over a general provision is not applicable. He also asserts that the drafters did not intend to bind the real estate owner to a single branded store in perpetuity, that MDC's decision renders the property unmarketable for sale or lease and virtually worthless, and that he had no reason to raise a constitutional taking argument before the MDC and the argument is not waived. In reply, Appellants argue, citing Ind. Code § 36-7-4-1015(b), that "[t]he statute leaves the decision to modify or terminate a commitment to the sole discretion of the commission and does not require findings." Appellants' Reply Brief at 7.

[16] To the extent we must construe the commitments, our primary task is to determine and effectuate the intent of the parties at the time the instrument was made. *See Ryan v. Lawyers Title Ins. Corp.*, 959 N.E.2d 870, 875 (Ind. Ct. App. 2011). We read the instrument as a whole, attempt to construe the language so as not to render any terms ineffective or meaningless, accept an interpretation which harmonizes its provisions, and note that specific terms typically control where specific and general terms relate to the same subject. *See id*.

[17] The parties essentially disagree as to what the signatories to the commitments intended when they included paragraph 9. Appellants assert that paragraph 9 should be construed to require that the new structure would be occupied by Walgreens indefinitely and that no other tenant or business would be permitted to occupy or use the building. We cannot say that the language of paragraph 9 and the commitments supports this view. Paragraph 9 states that "[t]he proposed *new* structure shall be occupied only by a Walgreens Drugstore." Appellants' Appendix Volume 2 at 77 (emphasis added). Based upon the

language of the paragraph 9 and the other commitments, we find that the signatories to the 1993 commitments intended that the first tenant to occupy the new structure would be Walgreens, and that the building would then be permitted to be occupied by another tenant and used for any purpose consistent with applicable zoning designations and any other applicable commitments. The record reflects that the developers desired to construct the building on the previously-vacant parcel and lease the building to Walgreens and that they obtained favorable rezoning by making certain commitments regarding the sale of liquor, dedication of a right-of-way, signage, exterior finishes, lighting, and site access design and location. The signatories anticipated that Walgreens would occupy the new structure, and that is what occurred with Walgreens leasing and occupying the new building from approximately 1994 until July 31, 2015.

[18] We further note our preference for an interpretation which disfavors restrictions on alienation and resolves any doubt in favor of the free use of property. *See Noblesville Redevelopment Comm'n v. Noblesville Assocs. Ltd. P'ship*, 674 N.E.2d 558, 562 (Ind. 1996) ("Indiana law favors the free alienability and development of land."); *see also F.B.I. Farms, Inc. v. Moore*, 798 N.E.2d 440, 445-446 (Ind. 2003) (discussing transfer restrictions related to corporate ownership and stating that "restrictions on transfer are to be read, like any other contract, to further the manifest intention of the parties," "[b]ecause they are restrictions on alienation and therefore disfavored, the terms in the restrictions are not to be expanded beyond their plain and ordinary meaning," and one of the factors

relevant in determining the reasonableness of such a restriction is "the degree of restraint upon alienation"); *Centennial Park, LLC v. Highland Park Estates, LLC*, 117 N.E.3d 565, 570 (Ind. Ct. App. 2018) ("We strictly construe restrictive covenants and resolve all doubts in favor of the free use of property and against restrictions.").

[19] For the foregoing reasons, we affirm the judgment of the trial court.

[20] Affirmed.

May, J., and Mathias, J., concur.