

FILED

Jul 21 2020, 8:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Karen A. Wyle
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Michael L. Carmin
Daniel M. Cyr
CARMINPARKER, PC
Bloomington, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Centennial Park, LLC,
*Appellant/Defendant,*

v.

Highland Park Estates, LLC,
*Appellee/Plaintiff.*

July 21, 2020

Court of Appeals Case No.
20A-PL-467

Appeal from the Monroe
Circuit Court

The Hon. Frank M. Nardi,
Special Judge

Trial Court Cause No.
53C01-1708-PL-1703

**Bradford, Chief Judge.**

# Case Summary

In December of 2016, Centennial Park, LLC, acquired land in Monroe County north of the Highland Park subdivision with the intention of developing it into the Centennial Park subdivision. Although the Centennial Park subdivision has roadway access to the east, access to State Road 46 through the Highland Park subdivision was deemed to be more desirable. To that end, Centennial Park acquired a lot located on a cul de sac on the north border of the Highland Park subdivision ("Lot 15"), successfully requested the Town of Ellettsville to annex it, granted Ellettsville a roadway easement through it, and installed a construction road on it.

As it happens, the plat to the Highland Park subdivision contained a restrictive covenant that prevented an owner from doing anything on any lot which may be or become an annoyance or nuisance to the neighborhood ("Covenant G"). Highland Park Estates, LLC ("Highland Park"), the developer of the Highland Park subdivision, relying in part on Covenant G, filed suit, seeking to enjoin Centennial Park from using Lot 15 as public right-of-way or construction road. In February of 2018, the trial court issued the requested injunction in favor of Highland Park. Meanwhile, in November of 2017, Centennial Park petitioned the Ellettsville Plan Commission to, *inter alia*, vacate Covenant G, which the Plan Commission did. Highland Park and a resident who lived adjacent to Lot 15 sought judicial review of the Plan Commission's vacation of Covenant G but were ultimately unsuccessful in overturning it.

[3] In October of 2019, Centennial Park moved for relief from the trial court's injunction, citing the vacation of Covenant G, which motion the trial court denied in February of 2020. Centennial Park contends that the trial court abused its discretion in denying its motion for relief from judgment, arguing the vacation of Covenant G leaves the trial court with no valid basis on which it may enjoin the use of the easement over Lot 15 for a construction and access road. Because we disagree, we affirm.

## Facts and Procedural History

[4] Phase I of the Highland Park subdivision is located in Monroe County and runs roughly north and south along Centennial Drive, which connects to State Road 46 on the south and ends in a cul de sac on the north. The plat, recorded in 1977, included Covenant G, which states that nothing shall be done on any lot "which may be or become an annoyance or nuisance to the neighborhood." *Centennial Park, LLC v. Highland Park Estates, LLC*, 117 N.E.3d 565, 568 (Ind. Ct. App. 2018). On December 21, 2016, Centennial Park acquired thirty acres of real estate directly north of Highland Park. *Id*. Centennial Park had only one means of ingress and egress at the time, a roadway through a subdivision to the west. Although Highland Park was developing Phase II of the Highland Park subdivision and offered Centennial Park an easement for access through it, Centennial Park apparently decided that it did not want to wait for improved access.

[5] To that end, Centennial Park purchased Lot 15 in Highland Park, which is on the cul de sac, and asked the Town of Ellettsville to annex Lot 15, which it did,

on May 22, 2017. On June 6, 2017, Centennial Park granted Ellettsville a fifty-foot-wide easement and right-of-way over the western side of Lot 15, connecting Centennial Drive to the Centennial Park subdivision. Centennial Park installed a construction road across Lot 15 and intends to construct a permanent access road. Debra Hackman owns Lot 16 on the cul de sac, and the installation of the construction road knocked down her mailbox three times and construction traffic has blocked access to her driveway, torn up the cul de sac, and spread mud over the roadway. Hackman indicated that one of the reasons she purchased Lot 16 was because it was located on a cul de sac, which is a safe area for her children to play and ride their bikes.

[6] On August 3, 2017, Highland Park sued Centennial Park, seeking an injunction to prevent Centennial Park from using Lot 15 as a public right-of-way or construction road. The trial court held an evidentiary hearing on December 7, 2017, and ruled in favor of Highland Park on February 28, 2018. *Id.* at 568–69. The trial court determined that the construction and future existence of the access road would violate the provisions of Covenant G and enjoined further construction. On appeal, we affirmed the trial court's issuance of the injunction against Centennial Park. *Id.* at 573.

[7] Meanwhile, on November 28, 2017, Centennial Park had petitioned for a partial plat vacation and vacation of covenants related to Lot 15. On August 2, 2018, the Ellettsville Plan Commission approved Centennial Park's petition for partial plat vacation and vacation of covenants. On August 31, 2018, Highland Park and Hackman petitioned the Monroe Circuit Court for a writ of certiorari

and judicial review in Cause No. 53C06-1808-PL-1782. *Town of Ellettsville, Ind., Plan Comm'n v. Highland Park Estates, LLC*, No. 19A-PL-466 at *2 (Ind. Ct. App. October 16, 2019). On November 5, 2018, the Plan Commission moved to dismiss Highland Park and Hackman's petition on the basis that they had not timely filed the Plan Commission's record. *Id*. The Monroe Circuit Court denied the Plan Commission's motion to dismiss, and the Plan Commission sought and received permission to file an interlocutory appeal. *Id*. at *3. On October 16, 2019, in cause number 19A-PL-466 ("Cause No. 466"), we reversed the Monroe Circuit Court's denial of the Plan Commission's motion to dismiss. *Id*. at *7. On October 29, 2019, Centennial Park moved for relief from judgment from the trial court's injunction pursuant to Indiana Trial Rule 60(B)(7) and (B)(8), citing the Plan Commission's vacation of the restrictive covenants. On February 12, 2020, the trial court denied Centennial Park's motion for relief from judgment.

# Discussion and Decision

[8] Centennial Park contends that the trial court abused its discretion in denying its motion for relief from judgment. Trial Rule 60(B) provides, in part, that "[o]n motion and upon such terms as are just the court may relieve a party or his legal representative from a judgment, including a judgment by default[.]"

> Our scope of review for the grant or denial of a T.R. 60(B) motion is limited to whether the trial court abused its discretion. An abuse of discretion occurs where the trial court's judgment is clearly against the logic and effect of the facts and inferences supporting the judgment for relief. Second, [when] the trial court

enters a general judgment, we will affirm on any theory
supported by the evidence of record.

*McIntyre v. Baker*, 703 N.E.2d 172, 174 (Ind. Ct. App. 1998) (citations omitted).

Centennial Park argues that because Covenant G has been vacated, there is no

longer any valid reason to enjoin it from building a construction and/or access

road through Lot 15. Highland Park counters that, even though Covenant G

has been vacated, the trial court had an independent basis on which to deny

Centennial Park's motion for relief from the injunction.[1] Specifically, Highland

Park argues that Centennial Park is not entitled to relief from judgment because

the trial court's injunction can be justified on the basis that the access road to

Centennial Park constitutes a nuisance that can be enjoined even without

Covenant G.

## I. Whether There Was an Independent Basis for Finding that the Access Road Would Constitute a Nuisance

"In Indiana, nuisances are defined by statute." *Wernke v. Halas*, 600 N.E.2d

117, 120 (Ind. Ct. App. 1992). Pursuant to Indiana Code section 32-30-6-6,

"[w]hatever is […] injurious to health[,] indecent[,] offensive to the senses[,] or

[] an obstruction to the free use of property [] so as essentially to interfere with

the comfortable enjoyment of life or property, is a nuisance[.]" Nuisances may

---

[1] Highland Park suggests that because it lost in Cause No. 466 on what it characterizes as a technicality, we should now be able to address its arguments that the Plan Commission's decision to vacate restrictive covenants was contrary to Indiana statutory law and violated its constitutional rights. Even assuming, *arguendo*, that we could address the merits of that case, our disposition of Centennial Park's claim renders it unnecessary to do so.

be categorized as public or private. A public nuisance is that which affects an entire neighborhood or community, while a private nuisance affects only one individual or a determinate number of persons. *Hopper v. Colonial Motel Props., Inc.*, 762 N.E.2d 181, 186 (Ind. Ct. App. 2002). A private nuisance arises when it has been demonstrated that one party has used his property to the detriment of the use and enjoyment of another's property. *Id.* Moreover, a nuisance may be a nuisance *per se*, something which cannot be lawfully conducted or maintained, or may be nuisance *per accidens*, where an otherwise lawful use becomes a nuisance by virtue of the circumstances surrounding the use. *Id.* Whether something is a nuisance *per se* is a question of law, and whether something is a nuisance *per accidens* is a question for the trier of fact. *Wernke*, 600 N.E.2d at 120. "[T]he relevant inquiry is whether the thing complained of produces such a condition as in the judgment of reasonable persons is naturally productive of actual physical discomfort to persons of ordinary sensibility, tastes, and habits." *Wendt v. Kerkhof*, 594 N.E.2d 795, 797 (Ind. Ct. App. 1992). Because the access road at issue affects a determinate number of persons (*i.e.* those who live on the cul de sac and would be subjected to additional traffic[2]) and there is nothing inherently illegal about the access road Centennial Park

---

[2] Of course, some residents of the cul de sac would be affected more than others, like those whose families include small children (like Hackman's); who specifically chose to live on the cul de sac, presumably because there would be no through traffic (also like Hackman); and/or those who would be living adjacent to the access road (again, like Hackman).

seeks to construct, the question is whether the record could support a determination that the access road would cause a private nuisance *per accidens*.

[10] In the trial court's February 28, 2018, order, it entered the following findings and conclusions:

FINDINGS OF FACT

[....]

11. [Centennial Park's] actions have negatively impacted the area around the cul-de-sac by causing construction vehicles and heavy equipment to travel through the cul-de-sac resulting in damage to at least one of the neighboring properties. Deborah Hackman is the owner of Lot 16, which is located on the cul-de-sac. According to Ms. Hackman, who resides on this property, as a result of the construction traffic for [the Centennial Park subdivision's] development, her mailbox has been knocked down three times, the construction traffic has blocked her access to her driveway, and the construction traffic has torn up the cul-de-sac and spread mud over the roadway. Ms. Hackman testified that she purchased Lot 16 because it was located on a cul-de-sac.

12. If [Centennial Park] is allowed to install a permanent roadway from [its] development to the cul-de-sac, the traffic from [the Centennial Park' subdivision's] development as well as other subdivisions connected to [the Centennial Park subdivision], consisting of approximately two hundred residential lots, will be funneled through the cul-de-sac to connect with Centennial Drive and eventually State Road 46. Even with the installation of a reverse "S" curve, [Centennial Park's] actions will transform the original cul-de-sac into a major direct thoroughfare, thus dramatically altering the nature of the roadway and the neighborhood.

[….]

14.   [Centennial Park's] intended reconfiguration of Centennial Drive from a cul-de-sac to a public community thoroughfare is a substantial change of use of the cul-de-sac which will generate a tremendous increase in traffic, projected to be an increase of approximately two thousand vehicle trips per day. This is a substantial alteration of the neighborhood and the use of properties in the neighborhood and constitutes an annoyance and nuisance to the owners of the lots on the Centennial Drive cul-de-sac in violation of restrictive covenant G.

[…]

CONCLUSIONS OF LAW

[….]

9.   [Centennial Park's] construction of an access road across Lot 15 to [the Centennial Park subdivision], [its] grant of an ingress egress easement to the Town of Ellettsville, and [its] intention to construct a reverse "S" curve in the roadway violate [….] Covenant G insofar as they constitute an annoyance or nuisance to the neighborhood. While [Centennial Park] correctly argues that nothing in the plat restricts the use of the lots in Phase I to residential purposes, the plat clearly shows that the subdivision was designed so that certain lots, including Lot 15 would be located on a cul-de-sac, and not on a main public thoroughfare.

[….]

11.   [Centennial Park's] construction of a main thoroughfare across Lot 15, thus substantially increasing the traffic flowing through an area, which was created as a neighborhood on a cul-de-sac, and altering a portion of a residential lot to become a major public thoroughfare is inconsistent with […] the parties' intention in creating the

> restriction and amounts to an annoyance and nuisance to
> the neighborhood, as prohibited by Covenant G.

Appellant's App. Vol. II pp. 18, 20–23.

[11] Centennial Park does not challenge any of the trial court's findings, so we accept them as established. *See, e.g.*, *Johnson v. Payne*, 549 N.E.2d 48, 49 (Ind. Ct. App. 1990) ("Where a party challenges the judgment only as contrary to law and does not challenge the special findings as unsupported by the evidence, we do not consider the evidence but accept the findings as true and look to them to determine whether they support the judgment."), *trans. denied*. For that matter, Centennial Park does not challenge the trial court's conclusion that the construction and the future existence of the access road through Lot 15 constitutes a nuisance and would continue to do so pursuant to Covenant G.

[12] Centennial Park argues only that the trial court's February 28, 2018, order cannot now support an injunction because the trial court did not specifically conclude that the access road would constitute a nuisance in general, only that it would be a nuisance pursuant to the now-vacated Covenant G.[3] To get straight to the point, this argument seems to be based on at least two false premises. First, Centennial Park would seemingly have us accept that its obligation not to cause a nuisance stemmed exclusively from Covenant G.

---

[3] While Centennial Park uses the term "common law nuisance," this concept does not seem to have relevance in a private-nuisance context. *See, e.g.*, *VanHawk v. Town of Culver*, 137 N.E.3d 258, 267 (Ind. Ct. App. 2019) ("Although Indiana has specifically declared that the conduct prescribed in the statute constitutes a public nuisance, 'the common law tort of public nuisance exists[.]'") (citation omitted). We take Centennial Park's argument as a claim that the trial court did not specifically find that the access road would constitute a nuisance in general.

Centennial Park's actions would have been, and still are, subject to general nuisance law even if Covenant G had never existed. Moreover, to the extent that Centennial Park's argument may depend on the notion that there is somehow a difference between a nuisance pursuant to Covenant G and a nuisance in general, Centennial Park neither cites any authority for this proposition nor explains what it believes the difference to be. In the end, Centennial Park has always been obligated to not use Lot 15 in such a way that causes a nuisance, and the vacation of Covenant G did nothing to change that.

[13] It is of no consequence that the trial court did not specially conclude that Centennial Park's use of Lot 15 was a nuisance in general. Because we may affirm on any basis apparent in the record, *see, e.g.*, *McIntyre*, 703 N.E.2d at 174, the trial court's stated rationale does not tie our hands. Moreover, because Covenant G was still in effect in February of 2018, we should not be surprised that the question of whether the access road would constitute a nuisance in general was not put before the trial court at that time. We should also not be surprised, then, that the trial court did not specifically address the question. In sum, we conclude that the record is sufficient to sustain a conclusion that the access road's construction and future existence would constitute a private nuisance *per accidens* independent of Covenant G. We now turn our attention to Centennial Park's specific claims regarding Trial Rule 60(B).

## II. Whether the Trial Court Abused its Discretion in Denying Centennial Park's Motion for Relief from Judgment

[14] As mentioned, our scope of review for the grant or denial of a T.R. 60(B) motion is limited to whether the trial court abused its discretion. *McIntyre*, 703 N.E.2d at 174. Centennial Park argues that it was entitled to relief pursuant to two subsections of Trial Rule 60(B), (B)(7) and (B)(8). Because both of Centennial Park's arguments depend on us accepting the contention that the record cannot support a conclusion that its activities on Lot 15 were and would continue to be a nuisance in general, neither need detain us long.

### A. Trial Rule 60(B)(7)

[15] Subsection (B)(7) allows for relief when "the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application[.]" "To establish that it is no longer equitable for a final judgment to have prospective application the movant must show that there has been a change of circumstances since the entry of the original judgment and that the change of circumstances was not reasonably foreseeable at the time of entry of the original judgment." *McIntyre*, 703 N.E.2d at 174–75.

[16] The trial court did not abuse its discretion in concluding that subsection (B)(7) does not entitle Centennial Park to relief from its previous judgment. While it is true that Covenant G had been vacated, we have concluded that the trial

court's injunction can be justified on the basis that the record supports a finding that the access road would be a nuisance even without it. Consequently, the vacation of Covenant G did not change circumstances such that it would be inequitable to enforce the injunction prospectively.

## B. Trial Rule 60(B)(8)

Subsection (B)(8) allows for relief for any reason (other than those mentioned in subsections (B)(1) through (B)(4), which are not relevant here) justifying relief from the operation of the judgment.

> The decision of whether the grant a Trial Rule 60(B)(8) motion is left to the equitable discretion of the trial court, and is reviewable only for abuse of discretion. *Gipson v. Gipson*, 644 N.E.2d 876, 877 (Ind. 1994).
>
> [….]
>
> A motion for relief from judgment filed for reason (8) shall be filed within a reasonable time and must allege a meritorious claim or defense. Ind. Trial Rule 60(B). [A] meritorious claim or defense is "one that would lead to a different result if the case were tried on the merits." *Butler v. State*, 933 N.E.2d 33, 36 (Ind. Ct. App. 2010) (quoting *Bunch v. Himm*, 879 N.E.2d 632, 637 (Ind. Ct. App. 2008)). Additionally, in order to be granted relief pursuant to Ind. Trial Rule 60(B)(8), the moving party must demonstrate some extraordinary or exceptional circumstances justifying equitable relief.

*State v. Collier*, 61 N.E.3d 265, 268 (Ind. 2016).

Centennial Park has also failed to establish that it is entitled to relief pursuant to subsection (B)(8). At the very least, because we have concluded that the trial court's injunction can be justified on a basis independent of Covenant G, the vacation of Covenant G in another proceeding does not provide Centennial

Park with a meritorious claim that the injunction should be lifted. To summarize, because the record supports a conclusion that the access road would be a nuisance with or without Covenant G, Centennial Park has failed to establish that the trial court abused its discretion in denying its motion for relief from judgment.

[19] The judgment of the trial court is affirmed.

Baker, J., and Pyle, J., concur.